BRENT J. NEWELL (State Bar No. 210312)
LAW OFFICES OF BRENT J. NEWELL
245 Kentucky Street, Suite A4
Petaluma, CA 94952
Tel: (661) 586-3724
brentjnewell@outlook.com

Attorney for Plaintiff
Center for Community Action
and Environmental Justice

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CENTER FOR COMMUNITY ACTION AND ENVIRONMENTAL JUSTICE, a nonprofit corporation,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, MICHAEL REGAN, in his official capacity as Administrator of the United States Environmental Protection Agency, and MARTHA GUZMAN, in her official capacity as Regional Administrator for Region 9 of the United States Environmental Protection Agency,<br><br>　　　　Defendants. | Case No.<br><br>**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF** |

COMPLAINT

# INTRODUCTION

1. Plaintiff Center for Community Action and Environmental Justice ("CCAEJ") files this Clean Air Act citizen suit to compel Defendants United States Environmental Protection Agency ("EPA"), Michael Regan, and Martha Guzman to approve, disapprove, or partially approve/disapprove Rule 2305, Warehouse Indirect Source Rule – Warehouse Actions and Investments to Reduce Emissions Program ("Rule 2305").

2. Fine particulate matter ("PM2.5") and ozone air pollution in the South Coast Air Basin of California has caused, and continues to cause, a public health crisis. According to the American Lung Association's State of the Air 2023 report, counties in the South Coast Air Basin rank among the worst in the United States for ozone and PM2.5. San Bernardino, Riverside, and Los Angeles counties are the first, second, and third most ozone-polluted counties in the United States, respectively. For long-term exposure to PM2.5, San Bernardino, Riverside, and Los Angeles counties rank as the seventh, eighth, and twelfth most polluted counties in the United States, respectively.

3. The Clean Air Act is a model of cooperative federalism, whereby the EPA sets health-based National Ambient Air Quality Standards ("NAAQS" or "standards") and the states develop the plans and strategies to achieve those standards. States submit their plans and strategies to EPA for review and approval. EPA shall approve a submission if it meets the Act's minimum requirements. EPA and citizens may enforce the EPA-approved State Implementation Plan as a matter of federal law to hold states and regulated entities accountable.

4. The South Coast Air Quality Management District ("South Coast AQMD") adopted Rule 2305 as part of its strategy to reduce PM2.5 and ozone-forming air pollution, and the California Air Resources Board submitted Rule 2305 to the EPA for review and approval as part of the State Implementation Plan.

5. EPA's review and approval of Rule 2305, with public notice and opportunity to comment, will ensure that Rule 2305 meets minimum Clean Air Act requirements, including but not limited to ensuring Rule 2305 is enforceable by citizens and the EPA.

6. To date, EPA has failed to take final action on Rule 2305.

COMPLAINT

1

## JURISDICTION

7. This Court has jurisdiction over this action to compel the performance of a nondiscretionary duty pursuant to 42 U.S.C. § 7604(a)(2) (citizen suit provision of the Clean Air Act) and 28 U.S.C. § 1331 (federal question jurisdiction).

8. The declaratory and injunctive relief CCAEJ requests is authorized by 28 U.S.C. §§ 2801(a) and 2202, and 42 U.S.C. § 7604.

9. On May 18, 2023, CCAEJ provided EPA, Regan, and Guzman written notice of the claims stated in this action at least 60 days before commencing this action, as required by Clean Air Act section 304(b)(2), 42 U.S.C. § 7604(b)(2) and 40 C.F.R. §§ 54.2 and 54.3. A copy of the notice letter, sent by certified mail, return receipt requested, is attached as Exhibit 1. Although more than 60 days have elapsed since CCAEJ provided written notice, EPA has failed to take final action and remains in violation of the Clean Air Act.

## VENUE

10. Venue lies in the Northern District of California pursuant to 28 U.S.C. § 1391(e)(1), because the Regional Administrator for Region 9 is located in San Francisco County and because EPA's alleged violations relate to the duties of the Regional Administrator in San Francisco.

## INTRADISTRICT ASSIGNMENT

11. Because the failure to perform a nondiscretionary duty alleged in this Complaint relates to the duties of the Regional Administrator located in San Francisco County, assignment to the San Francisco Division of this Court is proper under Civil L.R. 3-2(c) and (d).

## PARTIES

12. Plaintiff CENTER FOR COMMUNITY ACTION AND ENVIRONMENTAL JUSTICE is a progressive, base-building, non-profit corporation that brings communities together to find opportunities for cooperation, agreement, and problem solving to improve their social and natural environment. CCAEJ uses the lens of environmental health to achieve social change and works within communities to develop and sustain democratically based, participatory decision-making that promotes the involvement of a diverse segment of the community in ways that empower communities. CCAEJ prioritizes air quality and water quality advocacy to secure environmental justice and improve public

health and welfare in the Inland Empire and South Coast Air Basin. Members of CENTER FOR COMMUNITY ACTION AND ENVIRONMENTAL JUSTICE reside in Riverside and San Bernardino counties and in the South Coast Air Basin.

13. Plaintiff CENTER FOR COMMUNITY ACTION AND ENVIRONMENTAL JUSTICE is a person within the meaning of section 302(e) of the Clean Air Act, 42 U.S.C. § 7602(e), and may commence a civil action under section 304(a) of the Act, 42 U.S.C. § 7604(a).

14. Members of CENTER FOR COMMUNITY ACTION AND ENVIRONMENTAL JUSTICE live, raise their families, work, and recreate in Riverside and San Bernardino counties and the South Coast Air Basin. They are adversely affected by exposure to levels of PM2.5 and ozone air pollution that exceed the health-based National Ambient Air Quality Standards. The adverse effects of such pollution include actual or threatened harm to their health, their families' health, their professional, educational, and economic interests, and their aesthetic and recreational enjoyment of the environment in the Inland Empire and South Coast Air Basin.

15. The Clean Air Act violation alleged in this Complaint also deprives CENTER FOR COMMUNITY ACTION AND ENVIRONMENTAL JUSTICE members of certain procedural rights associated with EPA's required action on Rule 2305, including notice of, and opportunity to comment on, EPA's action and the capacity to enforce Rule 2305.

16. The Clean Air Act violation alleged in this Complaint has injured and continues to injure CENTER FOR COMMUNITY ACTION AND ENVIRONMENTAL JUSTICE members. Granting the relief requested in this lawsuit would redress these injuries by compelling EPA action that Congress required as an integral part of the regulatory scheme for improving air quality in areas violating the National Ambient Air Quality Standards.

17. Defendant UNITED STATES ENVIRONMENTAL PROTECTION AGENCY is the federal agency Congress charged with implementation and enforcement of the Clean Air Act. As described below, the Act assigns to the UNITED STATES ENVIRONMENTAL PROTECTION AGENCY certain nondiscretionary duties.

18. Defendant MICHAEL REGAN is sued in his official capacity as Administrator of the United States Environmental Protection Agency. He is charged in that role with taking various actions to

implement and enforce the Clean Air Act, including the actions sought in this Complaint.

19. Defendant MARTHA GUZMAN is sued in her official capacity as Regional Administrator for Region 9 of the United States Environmental Protection Agency. She is responsible for implementing and enforcing the Clean Air Act in Region 9, including the actions sought in this Complaint. Region 9 includes California and the South Coast Air Basin.

## STATUTORY FRAMEWORK

20. The Clean Air Act establishes a partnership between EPA and the states for the attainment and maintenance of the National Ambient Air Quality Standards. *See* 42 U.S.C. §§ 7401-7515. Under the Act, EPA has set health-based standards for six pollutants, including ozone and PM2.5. States must adopt a State Implementation Plan ("SIP") that contains enforceable emissions limitations necessary to attain the standards and meet applicable requirements of the Act. 42 U.S.C. §§ 7401(a)(1), (a)(2)(A); 7502(c)(6). States must submit all such plans and plan revisions to the EPA. 42 U.S.C. § 7410(a)(1).

21. Within 60 days of EPA's receipt of a proposed SIP revision, the Clean Air Act requires EPA to determine whether the submission is sufficient to meet the minimum criteria established by EPA for such proposals. 42 U.S.C. § 7410(k)(1)(B). If EPA fails to make this "completeness" finding, the proposed SIP revision becomes complete by operation of law six months after a state submits the revision. If EPA determines that the proposed SIP revision does not meet the minimum criteria, the state is considered to have not made the submission. 42 U.S.C. 7410(k)(1)(C).

22. Within twelve months of an EPA finding that a proposed SIP revision is complete (or deemed complete by operation of law), EPA must act to approve, disapprove, or approve in part and disapprove in part, the submission. 42 U.S.C. § 7410(k)(2).

23. If EPA disapproves the SIP revision, in whole or in part, then the Clean Air Act requires EPA to impose sanctions against the offending state or region, including increased offsets for new and modified major stationary sources or a prohibition on the use of federal highway funds, unless the state submits revisions within 18 months. 42 U.S.C. §§ 7509(a), (b). EPA must impose both offsets and highway funding sanctions within 24 months unless the state has corrected the deficiency. Moreover, the Act requires EPA to promulgate a Federal Implementation Plan within 24 months of disapproval unless

COMPLAINT
4

the state has corrected the deficiency and EPA has approved the revision. 42 U.S.C. § 7410(c).

24. Once EPA approves a SIP or SIP revision, the state and any regulated person must comply with emissions standards and limitations contained in the SIP, and all such standards and limitations become enforceable as a matter of federal law by the EPA and citizens. 42 U.S.C. § 7413; 7604(a), (f).

25. If EPA fails to perform a non-discretionary duty, including acting on a proposed SIP or SIP revision by the Clean Air Act deadline, then the Act allows any person to bring suit to compel EPA to perform its duty. 42 U.S.C. § 7604(a)(2).

## FACTUAL BACKGROUND

26. PM2.5 is a directly emitted pollutant and forms secondarily in the atmosphere by the precursor pollutants nitrogen oxides ("NOx"), ammonia, sulfur oxides, and volatile organic compounds ("VOC"). Ground-level ozone is formed by a reaction between NOx and VOC in the presence of heat and sunlight. Unlike ozone in the upper atmosphere which is formed naturally and protects the Earth from ultraviolet radiation, ozone at ground level is primarily formed from anthropogenic pollution.

27. Short-term exposure to PM2.5 pollution causes premature death, causes decreased lung function, exacerbates respiratory disease such as asthma, and causes increased hospital admissions. Long-term exposure causes development of asthma in children, causes decreased lung function growth in children, exacerbates respiratory disease such as asthma, increases the risk of death from cardiovascular disease, and increases the risk of death from heart attacks. Individuals particularly sensitive to PM2.5 exposure include older adults, people with heart and lung disease, and children.

28. Short-term exposure to ozone irritates lung tissue, decreases lung function, exacerbates respiratory disease such as asthma and Chronic Obstructive Pulmonary Disease (COPD), increases susceptibility to respiratory infections such as pneumonia, all of which contribute to an increased likelihood of emergency department visits and hospitalizations. Short-term exposure to ozone also increases the risk of premature death, especially among older adults. Long-term exposure to ozone causes asthma in children, decreases lung function, damages the airways, leads to development of COPD, and increases allergic responses.

29. On July 18, 1997, the EPA established the 1997 24-hour PM2.5 standard of 65 $\mu g/m^3$ and

the 1997 annual PM2.5 standard of 15 µg/m$^3$ after considering evidence from "numerous health studies demonstrating that serious health effects" occur from exposures to PM2.5. *See* 81 Fed. Reg. 6936 (February 9, 2016); *see also* 62 Fed. Reg. 38652 (July 18, 1997); 40 C.F.R. § 50.7.

30. On October 17, 2006, EPA strengthened the short-term 24-hour PM2.5 standard by promulgating the 2006 24-hour PM2.5 standard of 35 µg/m$^3$. 70 Fed. Reg. 61144 (Oct. 17, 2006); 40 C.F.R § 50.13.

31. Effective March 18, 2013, the EPA strengthened the annual PM2.5 standard by promulgating the 2012 annual PM2.5 standard of 12 µg/m$^3$. 78 Fed. Reg. 3086 (January 15, 2013); 40 C.F.R. § 50.18.

32. EPA classified the South Coast Air Basin as a moderate nonattainment area for the 1997 PM2.5 standards, a serious nonattainment area for the 2006 24-hour PM2.5 standard, and a serious nonattainment area for the 2012 annual PM2.5 standard.

33. On July 18, 1997, EPA promulgated the 1997 8-hour ozone standard to replace the 1-hour ozone standard. 62 Fed. Reg. 38856 (July 18, 1997); 40 C.F.R. § 50.9(b) (2003).

34. In 2008, EPA completed a review of the 8-hour ozone standard, found it necessary to strengthen the standard by lowering the ambient ozone concentration to 0.075 parts per million, and promulgated the 2008 8-hour ozone standard. 73 Fed. Reg. 16436 (March. 27, 2008); 40 C.F.R. § 50.15. The EPA based this decision on its findings that "(1) the strong body of clinical evidence in healthy people at exposure levels of 0.080 and above of lung function decrements, respiratory symptoms, pulmonary inflammation, and other medically significant airway responses, as well as some indication of lung function decrements and respiratory symptoms at lower levels; (2) the substantial body of clinical and epidemiological evidence indicating that people with asthma are likely to experience larger and more serious effects than healthy people; and (3) the body of epidemiological evidence indicating associations are observed for a wide range of serious health effects, including respiratory emergency department visits, hospital admissions, and premature mortality, at and below 0.080 ppm." 73 Fed. Reg. at 16476.

35. On October 26, 2015, EPA revised "the level of the [8-hour ozone] standard to 0.070 ppm to provide increased public health protection against health effects associated with long- and short-

term exposures" and promulgated the 2015 8-hour ozone standard. 80 Fed. Reg. 65292, 65294 (Oct. 26, 2015); 40 C.F.R. § 50.19.

36. EPA classified the South Coast Air Basin as an extreme nonattainment area for the 2008 8-hour ozone standard and an extreme nonattainment area for the 2015 8-hour ozone standard.

37. On May 7, 2021, the South Coast AQMD adopted Rule 2305.

38. The South Coast AQMD designed Rule 2305 to reduce NOx and diesel PM2.5 emissions from diesel trucks associated with warehouses. In 2019, the warehouse sector in the South Coast Air Basin accounted for approximately 49 tons per day of NOx, roughly equal to the NOx emissions from all stationary sources in the air basin. New warehouses and warehouse expansions have increased significantly since 2019, especially in San Bernardino County.

39. Rule 2305 requires warehouse operators to earn a specific annual number of points from a menu, a custom plan, or by paying fees into a mitigation fund. The number of points required depends on the number of diesel truck trips during each 12-month compliance period. Warehouse operators must submit annual reports to the South Coast AQMD. Warehouse owners must also submit reports to the South Coast AQMD. Over the first three years of Rule 2305 implementation, warehouses will be phased in based on warehouse size. Rule 2305 allows warehouse owners to "bank" excess points from a given compliance period for use in future compliance periods at the same warehouse or other warehouses under the control of the operator, subject to a three-year limit on points banked.

## FIRST CLAIM FOR RELIEF

### Failure to Perform a Non-Discretionary Duty to Act on Rule 2305

**(42 U.S.C. § 7410(k)(2))**

40. CCAEJ re-alleges and incorporates by reference the allegations set forth in paragraphs 1-39.

41. On August 13, 2021, the California Air Resources Board submitted Rule 2305 to EPA for inclusion in the State Implementation Plan.

42. Rule 2305 became complete by operation of law on February 13, 2022.

43. EPA has a mandatory duty to act on Rule 2305 no later than February 13, 2023. 42 U.S.C. § 7410(k)(2).

44. By failing to act on Rule 2305, EPA has violated and continues to violate its nondiscretionary duty to act on Rule 2305 pursuant to Clean Air Act section 110(k)(2), 42 U.S.C. § 7410(k)(2).

45. This Clean Air Act violation constitutes a "failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator" within the meaning of the Act's citizen suit provision. 42 U.S.C. § 7604(a)(2). EPA's violation of the Act is ongoing and will continue unless remedied by this Court.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the Court grant the following relief:

A. DECLARE that the Defendants have violated and continue to violate the Clean Air Act by failing to act on Rule 2305;

B. ISSUE preliminary and permanent injunctions directing the Defendants to finalize action on Rule 2305;

C. RETAIN jurisdiction over this matter until such time as the Defendants have complied with their nondiscretionary duty under the Clean Air Act;

D. AWARD to Plaintiff its costs of litigation, including reasonable attorney's and expert witness fees; and

E. GRANT such additional relief as the Court may deem just and proper.

Dated: July 19, 2023

Respectfully Submitted,

LAW OFFICES OF BRENT J. NEWELL

/s/ Brent J. Newell

Brent J. Newell
Attorney for Plaintiff
CENTER FOR COMMUITY ACTION AND ENVIRONMENTAL JUSTICE

COMPLAINT